Karen Ann LONG, a Minor, by and
through her next friend and father,
Donald E. Long, Plaintiff,

v.

UNITED STATES FIDELITY AND
GUARANTY COMPANY, a Corp.;
Government Employees Insurance Company, a Corp., Defendants.

Civ. A. No. 74–L–880–NE.

United States District Court,
N. D. Alabama,
Northeastern Division.

April 17, 1975.

Aubrey O. Lammons, of Lammons, Bell & Sneed, Huntsville, Ala., for Donald E. Long.

James H. Porter, of Bell, Richardson, Cleary & Tucker, Huntsville, Ala., for U. S. Fidelity and Guaranty Co.

Robert L. Hodges, of Ford, Caldwell, Ford & Payne, Huntsville, Ala., for Gov't Employees Ins. Co.

*MEMORANDUM OPINION*

LYNNE, Senior District Judge:

I. *STATEMENT OF THE CASE.*

Karen Ann Long was injured, to an undetermined degree,[1] in an automobile accident with an allegedly uninsured motorist on May 12, 1974. She was a passenger in a vehicle driven by Brenda Ann Kepple, and owned by Brenda's father, Joseph Kepple.

She now claims uninsured motorist coverage from Government Employees Insurance Company ("GEICO") in the amount of $30,000 through her father's insurance with that company, his policy listing three automobiles as insured vehicles. He paid a separate and specific premium for uninsured coverage for each vehicle.

Likewise, she claims $20,000 through a policy issued by United States Fidelity

---

1. Plaintiff's injuries are extensive, including loss of sight in her left eye.

& Guaranty Company ("USF&G") to Joseph Kepple, such policy listing two automobiles, in one of which plaintiff was a passenger at the time of the accident. A separate and specific premium was paid for uninsured coverage on each vehicle.

By motions for summary judgment, filed by USF&G on February 10, 1975, by plaintiff on February 12, 1975, and by GEICO on February 21, 1975, the following issues are raised:

A. Is USF&G's liability limited to a maximum of $10,000 by virtue of the "limits of liability" clause in its policy?

B. May plaintiff stack the benefits under either policy?

C. Are USF&G's benefits to plaintiff primary to those of GEICO?

The Court concludes that USF&G is primarily liable to plaintiff, that the maximum benefits she may collect from USF&G are limited by the amount of $10,000, and that the maximum benefits she may collect from GEICO are limited by the amount of $30,000.

## II. DISCUSSION.

### A. Limitation Clause.

Plaintiff and defendant USF&G have stipulated that there was a single policy of insurance between defendant and Joseph K. Kepple, Jr., and that this policy covered two separate automobiles. This insurance policy contained the following provision:

### Limits of Liability

(a) The limit of liability for uninsured motorists (family protection) coverage stated in the declarations as applicable to "each person" is the limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injuries sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the declarations as applicable to "each accident" is the total limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as a result of any one accident.

Defendant contends that the above provision effectively limits its total liability to $10,000.00 based on the Kepple policies. The Supreme Court of Alabama has considered and rejected this precise limitation clause in at least three other cases, *Employers Liability Assur. Corp., Ltd. v. Jackson*, 289 Ala. 673, 270 So.2d 806 (1972); *Phenix Ins. Co. v. Stuart*, 289 Ala. 657, 270 So.2d 792 (1972) (*per curiam*); and *Great Cent. Ins. Co. v. Edge*, 292 Ala. 613, 298 So.2d 607 (1974).

In *Edge*, the Supreme Court holds that, regardless of how clear and unambiguous the language of the limiting clause might be, "where the insurer issued a policy providing uninsured motorist coverage and collected a premium with respect to more than one automobile the insurer can not preclude a recovery based on each premium by a limiting clause." *Id.*, at 608. Since it is stipulated that USF&G received two premiums under Kepple's policy, it would seem that *Edge* invalidates the liability limitation urged in the present case.

This case, however, is distinguishable from those cited above in that here plaintiff seeks to collect under a policy on which she herself paid no premiums. In the foregoing three cases, the plaintiffs themselves, or a member of the plaintiff's immediate family, paid the premiums on the policies in suit. In *Jackson*, a husband and wife sued under a policy on which the wife had paid the premiums; in *Stuart*, the plaintiff herself had apparently paid the premiums; and in *Edge*, the plaintiff himself had paid the premiums. Thus, the policies there were issued to the plaintiff or to a member of his or her immediate family.

Whether this should dictate a different result here is doubtful. The language from *Edge* quoted above emphasizes receipt of two premiums by the in-

surance company. On the other hand, in discussing the *Jackson* opinion, the Court emphasizes "the fact that the insured had paid two premiums—. . .." 298 So.2d at 610. Likewise, in *Jackson*, the Court concluded: "[W]e think the better holding is that the appellant should pay in two instances because the insured had paid a premium in two instances for uninsured motorist coverage." 289 Ala. at 679, 270 So.2d at 810.

This issue need not be resolved on the facts presented here, since it is concluded that plaintiff may *not* stack the USF&G policies for reasons explicated below.

### B. *Stacking.*

USF&G concedes that plaintiff may recover $10,000 under the Kepple policy because she was an occupant of an insured vehicle. The defendant argues, however, that she may not stack the coverage provided by USF&G on the other Kepple automobile.[2]

The Supreme Court of Alabama has yet to face the factual situation presented here, where a person attempts to "stack" the uninsured coverage provided by policies under which she is an "insured" only because she was a passenger in a covered vehicle.

In its initial "stacking" decision, *Safeco Ins. Co. of America v. Jones*, 286 Ala. 606, 243 So.2d 736 (1970), the Court was confronted with a plaintiff seeking to recover $10,000 under his own liability policy. He had already recovered $10,000 in uninsured motorist coverage, of his total $25,000 in damages, from the liability carrier for the driver of the vehicle in which the plaintiff was a passenger at the time of the accident. The Court held that the plaintiff could collect the policy limits from his insurer, "so long as that amount does not exceed the amount of actual loss; . . .." 286 Ala. at 614, 243 So.2d at 742.

In *Hogan v. Allstate Ins. Co.*, 287 Ala. 696, 255 So.2d 35 (1971), the plaintiff was an insured under her father's policy on his automobile. She was injured while a passenger in a car owned by one Speegle, driven by Speegle's daughter. Speegle had uninsured coverage on his vehicle. The Court allowed plaintiff to collect $10,000 from her father's carrier, despite the fact that she had collected $4,500 from Speegle's carrier.[3]

In *Employers Liability Assur. Corp., Ltd. v. Jackson*, 289 Ala. 673, 270 So.2d 806 (1972), the action was brought by an insured and her spouse against the insurer under the uninsured motorist provisions covering two automobiles owned by the couple. They had been injured while passengers in an automobile owned by one Mary R. Bell and had collected, respectively, $10,000 and $2,250 from the uninsured coverage on the Bell vehicle. The Supreme Court allowed both the wife and her husband to collect an additional $20,000 each from their own carrier.[4]

In *Great Cent. Ins. Co. v. Edge*, 292 Ala. 613, 298 So.2d 607 (1974),[5] plain-

---

2. GEICO also contends that plaintiff may not stack the coverage on her father's three automobiles, thereby limiting her recovery from GEICO to a maximum of $10,000.

3. *State Farm Mutual Auto. Ins. Co. v. Cahoon*, 287 Ala. 462, 252 So.2d 619 (1971), and *Preferred Risk Mutual Ins. Co. v. Holmes*, 287 Ala. 251, 251 So.2d 213 (1971), involved the question whether plaintiffs could collect the full amount of uninsured motorist coverage in addition to their workmen's compensation payments. The Court held that the presence of workmen's compensation could not prevent the insured from recovering actual damages suffered, up to the limits of the liability policies.

4. *Jackson* is on all fours with this case insofar as the policy with GEICO is concerned. That decision requires that GEICO be held liable for up to $30,000, after exhaustion of the USF&G policy limits, but only to the extent of plaintiff's actual injuries.

5. In *Phenix Ins. Co. v. Stuart*, 289 Ala. 657, 270 So.2d 792 (1972) (*per curiam*), the Court relied on *Jackson* to allow plaintiff to stack the coverage on two automobiles. She apparently paid the premiums and sustained her injuries while a passenger in one of the covered vehicles.

tiff had been injured, while a pedestrian, by an uninsured motorist. He had in effect at the time a policy covering two vehicles, on which he had paid separate premiums for uninsured protection. The Supreme Court allowed him to stack the coverage.

The question presented by plaintiff's claim against USF&G thus appears to be open, and this Court must predict the outcome of this case were it before the Alabama courts. In *Jones, supra,* the Court relied heavily upon the Florida case of *Sellers v. United States Fidelity & Guaranty Co.,* 185 So.2d 689 (1966). Reliance on that case was predicated upon the similarity between the Florida and Alabama uninsured motorist laws. 286 Ala. at 610, 243 So.2d at 738. In *Edge, supra,* the reliance upon *Sellers* was reaffirmed. 292 Ala. at 614, 298 So.2d at 608–9. Research into the Florida cases, however, reveals no case which has presented the factual problems confronting this Court, so that decisions from that jurisdiction afford little guidance as to the path our own Supreme Court might adopt.

Nor do any of the cases from other jurisdictions, cited with approval in

*Jones, supra,*[6] or in *Jackson, supra,*[7] treat the problem presented here.[8]

A case presenting a similar issue, however, has been decided by this Court, *Witcher v. Travelers Indemnity Co.,* Civil Action No. 73–1023 (N.D.Ala., Sept. 10, 1974) (Lynne, J., unreported). There an omnibus insured, injured while a passenger in her employer's vehicle, attempted to stack the coverage on all vehicles covered by her employer's commercial insurance policy. She was not allowed to do so, on the authority of *Cunningham v. Ins. Co. of North America,* 213 Va. 72, 189 So.2d 832 (1972).

In *Cunningham,* the Virginia Supreme Court refused to allow a state employee to stack the coverage on all 4,368 state-owned automobiles. The Court reasoned that uninsured motorist policies contemplated two classes of insured: first, the named insured (and his relatives), and second, any other person while occupying the automobile. Stacking would be allowed only as to the first class, since a member of the second class "pays no premium and does not receive the broader uninsured motorist coverage of a named insured." 189 S.E.2d at 836.[9]

6. *Geyer v. Reserve Ins. Co.,* 8 Ariz.App. 464, 447 P.2d 556 (1968); *Transportation Ins. Co. v. Wade,* 11 Ariz.App. 14, 461 P.2d 190 (1970) [*reversed,* 106 Ariz. 269, 475 P.2d 253 (1970)]; *Stephens v. Allied Mut. Ins. Co.,* 182 Neb. 562, 156 N.W.2d 133 (1968); *Travelers Indemnity Co. v. Williams,* 119 Ga.App. 414, 167 S.E.2d 174 (1969); *Moore v. Hartford Fire Ins. Co. Group,* 270 N.C. 532, 155 S.E.2d 128 (1967); *Harleysville Mutual Casualty Co. v. Blumling,* 429 Pa. 389, 241 A.2d 112 (1968); *Sturdy v. Allied Mutual Ins. Co.,* 203 Kan. 783, 457 P.2d 34 (1969); *Safeco Ins. Co. of America v. Robley,* 399 F.2d 330 (8th Cir. 1968); *Simpson v. State Farm Mut. Auto. Ins. Co.,* (S.D. Ind.) 318 F.Supp. 1152 (1970).

7. *Fidelity & Casualty Co. of N. Y. v. Gatlin,* 470 S.W.2d 924 (Tex.Civ.App.1971); *Boetner v. State Farm Mutual Ins. Co.,* 34 Mich.App. 510, 191 N.W.2d 741 (1971) [*aff'd,* 388 Mich. 482, 201 N.W.2d 795 (1972)]; *Bose v. American Family Mut. Ins. Co.,* 186 Neb. 209, 181 N.W.2d 839 (1970); *Markham v. State Farm Mut. Auto. Ins. Co.,* 326 F.Supp. 39 (W.D.Okla.1971)

[*rev'd on gnds not here relevant,* 464 F.2d 703 (10th Cir. 1972)]; *Johnson v. Travelers Indemnity Co.,* 359 Mass. 525, 269 N.E.2d 700 (1971); *Harthcock v. State Farm Mut. Auto. Ins. Co.,* 248 So.2d 456 (Miss.1971); *Mountel v. Hardware Dealers Mut. Fire Ins. Co.,* 26 Ohio App.2d 105, 269 N.E.2d 857 (1969), [*aff'd sub nom. Carran v. State Automobile Mut. Ins. Co.,* 25 Ohio St.2d 33, 266 N.E.2d 566 (1971)]; *Kackman v. Continental Ins. Co.,* 319 F.Supp. 540 (D.Alas.1970); *Aldcroft v. Fidelity & Cas. Co. of N. Y.,* 106 R.I. 311, 259 A.2d 408 (1969); *United Services Auto. Ass'n v. Doktor,* 86 Nev. 917, 478 P.2d 583 (1970); *Raitt v. Nat'l Grange Mut. Ins. Co.,* 111 N.H. 397, 285 A.2d 799 (1971).

8. Nor is any light shed upon the matter by Widiss, *A Guide to Uninsured Motorist Coverage* (1969), a treatise heavily relied upon by the Supreme Court in *Jones, supra.*

9. The Court also held that the Virginia Uninsured Motorist Statute created the identical two classes. The statute is quite dissimilar from Alabama's, however, so no reliance may be placed upon this alternative rationale.

This reasoning is sound. It was adopted by a federal district court in a factual situation indistinguishable from the present one. *Moomaw v. State Farm Mut. Auto. Ins. Co.*, 379 F.Supp. 697, 703 (S.D.W.Va.1974).

Moreover, as was pointed out in *Witcher, supra,* the *Cunningham* court relied, in part, upon *Sturdy v. Allied Mut. Ins. Co.*, 203 Kan. 783, 457 P.2d 34 (1969), a case cited with approval in *Jones, supra,* 286 Ala. at 612, 243 So.2d at 740–1.[10] *Sturdy* recognizes the two classes of insureds as well.

 It is therefore concluded that the Alabama Supreme Court would hold that only those members of the first class of insureds may stack. Since plaintiff here, vis-a-vis the Kepple policy, is an insured of the second class, she may not stack the USF&G coverage.

C. *Primary Coverage.*

GEICO urges this Court to find that its liability is secondary to that of USF&G, since plaintiff was an insured in a vehicle covered by USF&G's policy.

 The Alabama Supreme Court has thus far been silent as to the question of primary-secondary liability under uninsured motorists' provisions. However, as has been seen, the Supreme Court has relied heavily upon *Sellers v. USF&G Co.*, 185 So.2d 689 (Fla.1968). In that case, it was held, in addition to the resolution of the stacking question, that where uninsured coverage was provided by more than one insurance policy, the coverage would be pro rated among the companies up to the limits of their respective liabilities and to the extent of the insured's injuries. In *Dairyland Ins. Co. v. Allstate Ins. Co.*, 257 So.2d 585 (1972), a Florida Court of Appeals refused to follow *Sellers, supra,* on this point, opining that the rule would discourage settlements and muddle insurance litigation. The Florida Supreme Court reversed, 271 So.2d 457 (1972),

reaffirming the decision in *Sellers, supra.*

This history indicates some likelihood that Alabama's Supreme Court would adopt a similar rule, particularly in view of the following language from *Safeco Ins. Co. of America v. Jones,* 286 Ala. 606, 613, 243 So.2d 736, 742 (1970), where the alignment of the insured companies was identical to the present case:

Here, the original plaintiff and appellee Jones was legally determined to have been damaged to the extent of $25,000.00. He was legally entitled to recover $10,000.00 from the driver Miller, and it was paid to him. Had he elected to sue his own insurer first, Safeco, he would have been legally entitled to recover $10,000.00 from it.

One implication of this *dictum* is that neither of the insurance companies was primarily liable, and that coverage would thus be pro rated between them.

However, the Alabama Court of Civil Appeals, in a recent and well-reasoned opinion, *Almeida v. State Farm Mut. Ins. Co.*, 53 Ala.App. 175, 298 So.2d 260 (1974), has refused to follow the pro rata contribution theory of *Sellers.* Instead, the Court, after noting the *dictum* from *Jones, supra,* holds:

. . . [T]he insurer of the non-owned automobile in which the claimant is injured is the primary insurer, and other insurers are secondary and excess carriers up to the amounts of damages suffered or policy limits, whichever is greater.

This decision, rather than the *dictum* in *Jones, supra,* shapes the channel which an *Erie*-bound federal court should follow.

Therefore, GEICO's coverage is secondary and excess to USF&G's in the present case.

An appropriate order will be separately entered.[*]

10. The repudiation of certain language from *Sturdy* in *Great Cent. Ins. Co. v. Edge, supra,* 298 So.2d at 610, weakens this analysis only slightly. The Court did not disapprove either that part of *Sturdy* relied on by the Virginia Supreme Court in *Cunningham* or that portion relied upon in *Jones, supra.*

[*] This opinion substantially reproduces the memorandum prepared for the Court by E. Mabry Rogers, the Court's Law Clerk.